L. S. WOODWORTH V. S. V. PARROTT.

FILED JUNE 2, 1896.   No. 6704.

1. **Review: CONFLICTING EVIDENCE.** The finding of a jury upon con-
flicting evidence will not be disturbed where there is sufficient
evidence to support it.

2. **Action for Price of Harvesting Machine: BREACH OF WARRANTY:
VERDICT FOR PLAINTIFF.** The evidence examined, and *held* suffi-
cient to sustain the findings of the jury.

3. **Instructions: REVIEW.** An assignment of error as to the giving or
refusing to give a group of instructions will be considered no
further than to ascertain that any one of such group was properly
given or refused.

4. ———: ———. Objections to an instruction examined, and *held* not
well taken.

ERROR from the district court of Boone county. Tried
below before THOMPSON, J.

*Charles Riley* and *J. S. Armstrong*, for plaintiff in error.

*Spear & Mack* and *F. S. Howell, contra.*

HARRISON, J.

On the date set forth in the instrument, L. S. Wood-
worth, the defendant in this action, executed and de-
livered to S. V. Parrott, the agent of Aultman, Miller &
Co., at Albion, Nebraska, the following order:

"ALBION, 6—20th, 1892.

"I hereby order of Aultman, Miller & Co., through
their agent, S. V. Parrott, one of their Buckeye harvest-
ers and binders, to be shipped to Albion on or before
harvest, 1892, for which I agree to pay the sum of $140,
in manner as follows: One-half cash October 1, 1892, one-
half November 1, 1893, and agree to make payment and
give notes in settlement of deferred payments as above
stated on delivery of machine, with seven per cent inter-

est from first day of August next. The warranty and agreement hereon indorsed are hereby made a part of this order.

"P. O. Albion, Neb. L. S. WOODWORTH."

On the back of this order appeared the following statements:

### "WARRANTY AND AGREEMENT.

"The Buckeye machine, for which the within order is given, is warranted to be well made, of good material, and, if properly managed, to do good work. The purchaser shall have one day in the harvest field to give it a fair trial, and agrees to see that the machine is properly managed. In case the machine does not do good work, the purchaser is to give written notice both to the agent from whom he received the machine and to Aultman, Miller & Co., Akron, Ohio, stating wherein it fails, and shall allow reasonable time to get to it and remedy the defects, if any, and the purchaser shall render necessary and friendly assistance to the person sent to look after the machine, and shall furnish a suitable team for making further test of the machine, and if it cannot be made to do good work he shall return it to the place where he received it, free of charge, in as good condition as when received, excepting natural wear, and a new machine will be given in its place, or the money will be refunded. Continued possession of the machine or failure to give notice as above shall be conclusive evidence that the machine fills the warranty, and no one has any authority to change this warranty in any manner whatever. AULTMAN, MILLER & CO."

"In case anything happens my crop, I am not to take the binder. If I do not get enough to cut, this is also void; and if it does not cut and handle flax, it is void."

Pursuant to the above order, a harvester and binder, as therein designated, was shipped to Albion, and on arrival was taken from the car and loaded on the wagon of Mr. Woodworth and hauled to his farm. The tongue

of the machine, it appears, was under some other freight
in the car, and could not be very readily taken from the
car at the time the other parts of the machine were re-
moved therefrom, and consequently it was not delivered
to Woodworth at the time he received the other portions
of the harvester.   It is possibly true that there was an-
other part or were parts of the machine contained in a
box, which Woodworth did not get when the machine
was taken from the car.   Whether he did or not does
not very clearly appear from the evidence on this point.
It is not material except as its being the fact or not has
a tendency to prove or disprove whether the harvester
was delivered to Woodworth in Albion, or on his farm.
During the next day after the one on which parts of the
harvester were removed from the car and received by
Woodworth and taken to his farm, the agent and a man
in his employ took the tongue of the machine and possi-
bly some other parts and went to Woodworth's place,
and they and he set up the harvester and with it cut a
short swath of green oats and commenced to cut some
barley, one object being to try the machine and ascertain
whether it would do "good work," as had been agreed
that it should.   After going a few times around the small
field or patch of grain, probably not more than twice,
they stopped for the day, and a brace to the reel, which
it was thought was too long, was detached from the ma-
chine and by the agent and his employe taken to Albion,
shortened, and the next morning taken back to the farm,
readjusted in its place on the harvester, and the work of
cutting the barley and testing the machine as a harvester
and binder resumed.   It also appears from the testimony
of one witness that a third time he was sent and went to
Woodworth's farm for the purpose of putting the har-
vester and binder in working order, which task was by
him duly performed.   Woodworth failed to pay for the
harvester or to execute and deliver the promissory notes
provided for and as agreed upon in the order for the ma-
chine, and the agent was compelled to pay for it and re-

ceived from Aultman, Miller & Co. an assignment of the order and claim against Woodworth and instituted this action thereupon. Woodworth has, at all times since the commencement of the suit, contended that the machine was not as warranted, that it did not do good work, would not properly elevate or bind the grain; that he was to receive a flax attachment, consisting of what was called during the trial and in the pleadings, a "flax dump," also a "smooth sickle" to be used in cutting flax; that these were never delivered to him; that the machine was not delivered to him at Albion, but on his farm; that the agent agreed that if it did not do good work and he did not make it work right, Woodworth was to leave it in the field and the agent would take it away. Woodworth cut the barley, about three acres, left the machine in the field and did nothing further with it until February or March, the succeeding year. After this suit was begun he took it to Albion and left it on a vacant block. A trial of the issues to a judge and jury resulted in a verdict and judgment for plaintiff, to review which is the object of error proceedings in this court.

It is claimed that by the contract of sale the defendant was to have delivered to him a flax attachment; that this was never done, and there being this failure, on the part of the party selling, to complete the contract, there existed no valid claim for the whole amount of the consideration. The jury, no doubt, believed from the evidence that there was no agreement to furnish the extra attachment, and the evidence was ample to warrant and sustain such a finding. In regard to each of the questions of whether the plaintiff agreed that the machine should be left in the field if rejected by defendant, and plaintiff would go and get it, whether it did good work or not, whether defendant gave notice subsequent to the machine being put in order the last time, a few days after it was set up, that he was dissatisfied with it, or that it did not work according to agreement, and whether the defendant refused to execute the note or settle the claim

for the machine, there was a direct conflict in the evidence, and the jury having resolved them in favor of plaintiff, and the evidence as to each being sufficient to sustain such findings, while it is true that the evidence would have sustained findings to the contrary, conforming to a well established rule of this court, they will not be disturbed, and what has been said of these questions applies with equal force to that of whether the machine had ever been tendered to the agent.

It is contended that the paragraph numbered 7 of the charge to the jury, given by the court on its own motion, was inapplicable to the facts of this case. A careful consideration of this instruction, in connection with all the evidence adduced on the trial, convinces us that it is not open to the complaint urged against it.

One assignment of the petition in error was in the following terms: "The court erred in giving the first, second, fourth, fifth, and seventh instructions asked by defendant in error." It is stated by counsel that, under the rule of this court, if any one of the instructions to which the above assignment refers is not erroneous, the assignment must fail as to all. By an examination of the instructions above included, we reach the conclusion that the one numbered 2 was applicable to the evidence and issues and not erroneous, when construed, as it must be, with all other portions of the charge, and its giving was proper. This being determined, this assignment must be overruled.

Another assignment of error reads as follows: "The court erred in refusing the fourth, fifth, and sixth instructions asked by plaintiff in error." As stated by counsel in the brief filed, if any one of these instructions was properly refused, the assignment must fail. The subject-matter embraced in the instruction numbered 4 referred to in the assignment just quoted herein was fully covered and embodied in the paragraph numbered 6 of instructions prepared and given by the trial judge on his own motion; hence its giving was properly refused.

This disposes of the assignment of error, adversely to the contention in regard thereto in behalf of plaintiff in error. There were no other alleged errors argued by counsel, and it follows, from the conclusions herein reached, that the judgment of the district court must be

AFFIRMED.